## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**YOLUNDA RICHARDSON,**      :
                            :
    **Plaintiff,**      :      **CIVIL ACTION FILE NO.**
                            :      **1:14-CV-03623-AJB**
**v.**                      :
                            :
**CAROLYN W. COLVIN,**      :
***Acting Commissioner Social***      :
***Security Administration,***      :
                            :
    **Defendant.**      :

## <u>O R D E R   A N D   O P I N I O N</u>[1]

Plaintiff Yolunda Richardson ("Plaintiff") brought this action pursuant to § 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c)(3), to obtain judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("the Commissioner") denying her application for Supplemental Security Income Benefits ("SSI") under the Social Security Act.[2] For the reasons below, the

---

[1]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. [*See* Dkt. Entries dated 4/3/15]. Therefore, this Order constitutes a final Order of the Court.

[2]    Title II of the Social Security Act provides for federal Disability Insurance Benefits. 42 U.S.C. § 401 *et seq.* Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for Supplemental Security Income Benefits for the disabled. Title XVI claims are not tied to the attainment of a particular period of

undersigned **REVERSES** the final decision of the Commissioner **AND REMANDS**

the case to the Commissioner for further proceedings consistent with this Opinion.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for SSI on February 3, 2011, alleging disability

commencing on January 1, 2006.  [Record (hereinafter "R") 34].[3]   Plaintiff's

applications were denied initially and on reconsideration. [*Id*.].  Plaintiff then requested

a hearing before an Administrative Law Judge ("ALJ"), and an evidentiary hearing was

held on February 12, 2013.  [R52-77].  The ALJ issued a decision on April 18, 2013,

finding that Plaintiff was not disabled.  [R34-44].  Plaintiff sought review by the

Appeals Council, and the Appeals Council denied Plaintiff's request for review on

─────────────────

insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).
Otherwise, the relevant law and regulations governing the determination of disability
under a claim for DIB are nearly identical to those governing the determination under
a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005)
(citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the
legal standards to be applied are the same regardless of whether a claimant seeks DIB,
to establish a "period of disability," or to recover SSI, although different statutes and
regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that
the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI).
Therefore, to the extent that the Court cites to DIB cases, statutes, or regulations, they
are equally applicable to Plaintiff's SSI claims.

[3]      The parties do not object to the ALJ's recitation of the procedural history.
[*See* Docs. 9, 12].

2

September 13, 2014, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed an action in this Court on November 10, 2014, seeking review of the Commissioner's decision. [*See* Docs.1, 3]. The answer and transcript were filed on March 2, 2015. [Docs. 6, 7]. On April 3, 2015, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 9], and on June 3, 2015, the Commissioner filed a response in support of the decision, [Doc. 12]. Plaintiff did not file a reply brief. (*See* Dkt.). The matter is now before the Court upon the administrative record and the parties' pleadings and briefs, and is accordingly ripe for review pursuant to 42 U.S.C. § 1383(c)(3).

## II.    STATEMENT OF FACTS

### A.    Background

Plaintiff was 43 years old on the alleged onset date of disability and completed up to the 11th grade. [*See* R39, 54]. Plaintiff previously worked as a fast food worker, [R56], however, whether this qualifies as "past relevant work" is a contested issue. [*See* Doc. 9 at 9-11].

3

**B.    Medical Records[4]**

In March 2011, Bereavel Webb, M.D., completed a Mental Impairment Questionnaire.  [R270-72].  Dr. Webb noted that on the most recent status exam, Plaintiff had normal orientation, appearance and general behavior, affect and mood, thought processes and flow of mental activity, thought content, recent and remote memory, and insight/judgment/impulse control.  [R270-71].  Dr. Webb opined that Plaintiff's ability to understand, remember and carry out simple instructions is normal as well as Plaintiff's ability to get along with the public, supervisors, and co-workers. [R271-72].  Dr. Webb did not give an opinion as to Plaintiff's ability to deal with changes in the work setting, make simple work-related decisions, or the likelihood that Plaintiff would decompensate under stress.  [R272].

In June 2011, Plaintiff saw Barbara Green-Muldrow, M.D., Ph.D., for a consultative examination.  [R379-86].  Dr. Muldrow diagnosed Plaintiff with bilateral knee pain, bilateral hand pain, depression, anxiety, and post-traumatic stress disorder ("PTSD").  [R381].  Dr. Muldrow observed that Plaintiff could arise from a seated position and mount and dismount from the exam table without difficulty.  [*Id.*].

---

[4]    The facts cited below are those deemed relevant by the parties and relevant to the Court's analysis.

AO 72A
(Rev.8/8
2)

Dr. Muldrow further observed that there was no undue shifting of positions during the examination. [*Id*.]. Dr. Muldrow thus opined that Plaintiff can sit for an extended period of time without difficulty and sustain positions and postures for an extended period of time without difficulty. [*Id*.]. Dr. Muldrow did, however, indicate that Plaintiff may have difficulty performing tasks requiring her to repetitively climb, stoop and bend due to back and bilateral knee pain. [R381-82]. She further opined that Plaintiff may be capable of performing tasks requiring her to push, pull, grip, and grasp. [R382]. Finally Dr. Muldrow noted that Plaintiff can feed herself and take care of personal hygiene, as well as button clothes and tie shoelaces. [*Id*.].

In July 2011, Plaintiff saw Debra Lewis, Ph.D., for a consultative psychological evaluation. [R400-06]. Based on Dr. Lewis' evaluation of Plaintiff, Dr. Lewis opined that

> the claimant can understand, remember and follow simple and complex instructions. Her attention and concentration capabilities appear adequate; however her mood disorder may interfere with her being able to satisfy production norms and adhere to a work schedule. There may be some physical reasons that also interfere with her being able to adhere to a work schedule but that is beyond the scope of this evaluation. Based on her interaction in the evaluation she appears to be able to get along with the public, coworkers and supervisors. If faced with a stressor in the workplace it is not likely she would decompensate but she may resort to substance abuse. Her prognosis is fair with continued psychiatric support and commitment to sobriety.

5

[R406].

In August 2011, Theodore Weber, M.Div., Psy.D., with the Disability Determination Services ("state agency") completed a Psychiatric Review Technique form. [R410-22]. Dr. Weber recognized that Plaintiff has medically determinable impairments of PTSD, obsessive-compulsive disorder ("OCD"), and anxiety. [R415]. Dr. Weber opined that Plaintiff has mild restriction of activities of daily living; moderate difficulties in maintaining social function; and moderate difficulties in maintaining concentration, persistence, or pace. [R420]. Dr. Weber concluded that Plaintiff is "capable of completing simple tasks on a regular basis from a mental standpoint." [R426].

Dr. Weber also completed a Mental Residual Functional Capacity ("RFC") Assessment form. [R424-26]. Dr. Weber opined that Plaintiff is not significantly limited in the ability to understand, remember, and carry out very short and simple instructions, but is moderately limited in the ability to understand, remember, and carry out detailed instructions. [R424]. Dr. Weber also opined that Plaintiff is moderately limited in the ability to maintain attention and concentration for extended periods. [*Id.*]. Dr. Weber opined that Plaintiff is moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms

6

and to perform at a consistent pace without an unreasonable number and length of rest periods.  [R425].  It was Dr. Weber's opinion that Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors.  [*Id*.].  Dr. Weber further opined that Plaintiff is moderately limited in the ability to set realistic goals or make plans independently of others.  [*Id*.].

In August 2011, Thomas German, M.D., with the state agency completed a case analysis of Plaintiff's physical impairments.  [R430].  Dr. German noted that Plaintiff does not take any pain medication, has a normal gait with no assistive device, and 5/5 strength.  [*Id*.].  Dr. German found Plaintiff's allegations of only being able to walk less than a block and stand up to 30 minutes to not be credible.  [*Id*.].

In November 2011, state agency physician Dawn Ferguson, M.D., completed a Physical RFC Assessment form.  [R1170-77].  Dr. Ferguson opined that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently and she can sit, stand, and walk six hours in a workday.  [R1171].  Dr. Ferguson further opined that Plaintiff could occasionally climb ramps/stairs and ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. [R1172]. Dr. Ferguson cited Dr. Muldrow's consultative evaluation as support for her opinion.  [R1176].

AO 72A
(Rev.8/8
2)

### C.   Evidentiary Hearing Testimony

At the hearing, Plaintiff testified that she is divorced and lives alone.  [R55].
Plaintiff testified that she has not worked since filing her application for disability,
however, there is a record of earnings from self-employment from 2011. [*Id*.].  Plaintiff
testified that, in 2009, her wallet was stolen along with her ID and Social Security Card
and thus, it was not her that reported the 2011 earnings, as she had reported in an
affidavit to the IRS. [R55-56, 72].  She only recently got a new ID and Social Security
Card as she had not reported the incident. [R72].  Plaintiff testified that the only other
job that she had was as a fast food worker at McDonald's in 2000 and 2001. [R56].

Plaintiff's attorney questioned Plaintiff about her work experience where she was
required to stand during her entire shift and carry objects that weighed about five
pounds. [R57-58].  Plaintiff testified that she can barely carry five pounds for two and
a half hours in a workday because she would get pain in her hands. [R58].  Plaintiff
stated that it is hard for her to grip things or hold on to things for any amount of time.
[*Id*.].

Plaintiff testified that her bipolar disorder would affect her ability to work as a
cashier because she does not handle being around the public well as she would get
confused and her short term memory is bad. [R59].  Some symptoms of her bipolar

AO 72A
(Rev.8/8
2)

disorder include depression and crying. [R62]. Plaintiff also testified that symptoms of her PTSD include paranoia, nervousness, and fear to leave the house. [R59-60]. With OCD, Plaintiff testified that she checks the stove and door over and over again, about 15 times in an hour. [R60]. Plaintiff also testified that she constantly checks to see if she has unplugged something or turned off the heat or air conditioning and this behavior affects her leaving the house because she gets scared that she forgot to do those things. [R61]. Plaintiff testified that she has anxiety attacks three or four times a week, during which she panics, gets nervous, sweats a lot, and at times hears voices. [*Id.*]. She stated that she used to have suicidal thoughts, but that she has not had them in a long time because she believes that if she committed suicide, she would go to hell. [R61-62].

Regarding her physical impairments, Plaintiff testified that she has arthritis in her right knee, right hip, and fingers. [R62]. She stated that she can barely bend and cannot squat at all. [R63]. She claimed that she experiences pain in her hips when she is sitting down and to alleviate the pain, she would shift and, after about thirty minutes, she would stand up, shake her leg out, and move around. [*Id.*]. Plaintiff also stated that it is painful when she stands and when she walks. [R63-64]. Plaintiff goes to a methadone clinic for pain management. [R64].

9

Plaintiff testified that she spends about 15 hours a day in the bed, does not sleep well at night, and uses the bathroom every 30-40 minutes. [R65-66]. However, Plaintiff does not know why she goes to the bathroom so frequently and her primary care doctor has set up an appointment for her to see a urinary gynecologist. [R66]. She sees her primary care doctor every three to four months. [*Id*.]. She also sees mental health doctors every two to three months and has been seeing them since 2010, however, those documents were not in the record. [R69]. Side effects from her medication include sleepiness, fogginess, headaches, and weird dreams. [R66-67]. She has headaches almost daily. [R67]. Her daughter drives her around, cleans, and fixes meals for her. [*Id*.].

The vocational expert ("VE") testified that Plaintiff's work as a fast foods worker is classified as light exertion. [R75]. The VE testified that a hypothetical person with Plaintiff's age, education and previous work experience, who could perform work at the light exertional level but with the following limitations - occasionally climb ladders, ropes, or scaffolds, ramp or stairs, balance, stoop, kneel, crouch, or crawl; avoid concentrated exposure to workplace hazards; understand, remember, and carry out simple instructions only; and cannot perform fast-paced production work, could perform Plaintiff's past work as a fast foods worker. [*Id*.].

10

The VE testified that the same hypothetical person who also cannot deal with work stress or routine changes in a work setting on a consistent basis, would not be able to perform any work.  [*Id.*].  As to the person in the first hypothetical only, the VE testified that a person who had the additional limitation of requiring a minimum of two hours of rest in a workday could not perform any work.  [R75-76].

On examination by Plaintiff's attorney, the VE testified that if a hypothetical person has the limitations set forth in Dr. Lewis's report, including that the person has a mood disorder that interferes with her ability to satisfy production norms and adhere to a work schedule, such person would not be able to perform Plaintiff's past relevant work and there would be no jobs that are available.  [R76].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant has not engaged in substantial gainful activity since February 3, 2011, the application date (20 CFR 416.971 *et seq.*).

. . .

2.   The claimant has the following severe impairments: bilateral knee osteoarthritis, depression, posttraumatic stress disorder, and obsessive-compulsive disorder (20 CFR 416.920(c)).

. . .

11

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

. . .

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasional ladders, ramps stairs, ropes, scaffolds, balance, stoop, kneel, crouch, crawl; avoid concentrated exposure to workplace hazards; understand, remember, carry out simple instructions only; and no fast paced production work.

. . .

5.      The claimant is capable of performing past relevant work as a fast food worker.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

. . .

6.      The claimant has not been under a disability, as defined in the Social Security Act, since February 3, 2011, the date the application was filed (20 CFR 416.920(f)).

[R36-44].

In support of the decision, the ALJ noted that there were substantial earnings reported in 2011.  [R36].  The ALJ discussed Plaintiff's testimony on this matter as evasive and noted that, while Plaintiff alleged her wallet had been stolen in 2009,

12

Plaintiff never filed a tax return or police report.  [*Id*.].  The ALJ further noted that Plaintiff simply filed an identity theft affidavit and has not provided a 2011 tax return or evidence from the IRS that there is not a 2011 tax return that matches her name and social security number.  [*Id*.].  The ALJ also found it suspect that her stolen identity would not have been used until three years after her ID was stolen and her ID was not replaced until 2012.  [*Id*.].  The ALJ thus found that the inconsistencies and lack of documentation from the IRS "severely erodes her overall credibility."  [*Id*.].

In considering the Paragraph B criteria when determining whether Plaintiff's mental impairments meets or equals a listed impairment, the ALJ found that Plaintiff has mild restrictions in activities of daily living; mild difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence or pace.  [R37].  In support, the ALJ relied on the notes of consultative psychologist Dr. Lewis, in which Dr. Lewis noted that Plaintiff does not need assistance with any of her activities of daily living; Plaintiff travels on public transportation to go to her doctors' appointments; she attends group meetings every week; she can follow simple directions, but cannot complete tasks on a consistent basis; and Plaintiff can manage her finances, make decisions, organize, and plan her life without assistance.  [*Id*.].

13

With regard to the RFC, the ALJ first discussed Plaintiff's hearing testimony. [R39-40]. The ALJ then discussed Plaintiff's medical record. [R40-42]. The ALJ noted that, at an emergency room visit on December 8, 2006, Plaintiff was well nourished, in no pain, and was not taking any medications. [R40]. On November 10, 2008, Plaintiff complained of knee and leg pain, however Plaintiff demonstrated normal musculoskeletal/foot examination and Plaintiff ambulated without an assistive device. [*Id.*].

The ALJ discussed Dr. Webb's mental impairment questionnaire from March 2011. [*Id.*]. The ALJ noted that Plaintiff was normal in orientation, appearance and general behavior, affect and mood, thought processes and flow of mental activity, content of thought, recent and remote memory, and insight/judgment/impulse control. [*Id.*]. The ALJ further noted that Dr. Webb opined that Plaintiff demonstrated normal ability to understand, remember, and carry out simple instructions; get along with the public, supervisors, and co-workers; deal with changes in the work setting; and make simple work-related decisions. [*Id.*]. The ALJ accorded substantial weight to Dr. Webb's opinions, finding them to be consistent with the evidence of record as the evidence showed that Plaintiff missed several psychological appointments and declined

14

medications for treatment. [*Id*.]. The ALJ found this to suggest that Plaintiff's symptoms may not have been as limiting as she alleged. [*Id*.].

The ALJ also discussed Plaintiff's consultative examination with Dr. Muldrow, noting particularly that Dr. Muldrow opined that Plaintiff can sustain positions and postures for an extended period of time without difficulty; sit for an extended period of time without difficulty; Plaintiff may have difficulty performing tasks requiring her to repetitively climb, stoop, and bend; and that Plaintiff may be capable of performing tasks requiring Plaintiff to push, pull, grip, and grasp. [R40-41]. The ALJ accorded substantial weight to Dr. Muldrow's opinions as certain aspects were consistent with the RFC. [R41].

The ALJ further pointed out that treatment notes from October 21, 2011 indicated that Plaintiff missed multiple psychological appointments and declined steroid injections for her knee pain. [*Id*.]. He also noted that in December 2012, Plaintiff was diagnosed with right hip and knee pain that was chronic. [*Id*.].

The ALJ next discussed Plaintiff's consultative examination with Dr. Lewis and noted that Dr. Lewis opined that Plaintiff could understand, remember, and follow simple and complex instructions; Plaintiff's attention and concentration appeared adequate, but her mood disorder may interfere with her being able to satisfy production

norms and adhere to a work schedule; Plaintiff appears to be able to get along with the public, coworkers, and supervisors; and if faced with a stressor in the workplace, it is not likely that Plaintiff would decompensate.  [R41-42].  The ALJ accorded substantial weight to Dr. Lewis' medical assessments and opinions because the ALJ found them to be consistent with Dr. Lewis' own notes and well supported by other medical evidence of record.  [R42].

The ALJ found that Plaintiff's allegations of disability were not entirely credible because her allegations were disproportionate to the medical records and tests, she has not received the type of medical treatment one would expect for a totally disabled person, and the treatment has been routine and/or conservative in nature.  [*Id*.].  The ALJ also cited to previously discussed medical records in support of his credibility determination.  [R42-43].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The impairment or impairments must result

16

from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy.   42 U.S.C. § 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. § 416.912(a).  The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. § 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(i).  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities.   *See* 20 C.F.R. § 416.920(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments

17

in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. § 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.  *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. § 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superceded by statute on other*

18

grounds by 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986)  (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

19

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.    CLAIMS OF ERROR

Plaintiff raises two issues on appeal: 1) the RFC was not supported by substantial evidence; and 2) the ALJ erred in finding that Plaintiff was capable of performing past relevant work when none existed.  [Doc. 9 at 1].

20

### A.    Arguments of the Parties

Plaintiff first argues that the ALJ failed to account for all of Plaintiff's mental limitations.  [Doc. 9 at 6-9].  Plaintiff argues that the ALJ did not address Plaintiff's ability to interact appropriately with supervisors and coworkers or her ability to deal with changes in the work setting as discussed by Dr. Weber.  [*Id.* at 7].  Plaintiff further notes that the ALJ did not appear to provide specific weight to the opinions of Dr. Weber.  [*Id.* at 7 n.5].  Plaintiff also argues that the ALJ did not address Plaintiff's ability to sustain mental work activities on a regular and continuing basis based on the opinions of Dr. Lewis and Dr. Weber.  [*Id.* at 8].  Specifically, Plaintiff points to Dr. Lewis' opinion that Plaintiff's mood disorder may interfere with her ability to adhere to a work schedule, and Dr. Weber's opinion that Plaintiff would have moderate difficulties completing a normal workday and workweek without interruptions and perform at a consistent pace without an unreasonable number and length of rest periods. [*Id.* at 8 (citing [R406, 425])].  Plaintiff argues that the ALJ provided no rationale for discounting the opinions while accepting other opinions from the same doctors, thus, inappropriately acknowledging only the evidence that supported his decision.  [*Id.*].  Additionally, Plaintiff argues that the ALJ's determination that Plaintiff can "understand, remember, carry out simple instructions only; no fast paced production

AO 72A
(Rev.8/8
2)

work" do not account for Plaintiff's moderate difficulties with concentration, persistence, or pace. [*Id.*].

Next, Plaintiff argues that Plaintiff's work as a fast food worker is not "past relevant work" because Plaintiff has not engaged in substantial gainful activity since 1996. [Doc. 9 at 9-11]. Plaintiff also suggests that the job requirements of a fast food worker may require a fast-paced production and the ALJ should have made a more specific inquiry into the pace requirements of a fast food worker. [*Id.* at 11-12]. Finally, Plaintiff notes that when the VE was asked questions regarding her ability to deal with changes in a work environment, the VE found no jobs, and the VE also found no jobs if a limitation was incorporated for interference to adhere to a work schedule.[5] [*Id.* at 12].

In response, the Commissioner argues that the record evidence supports the ALJ's mental RFC and credibility determinations. [Doc. 12 at 5]. The Commissioner cites to various notes in the record in which Plaintiff exhibited good memory, attention and concentration, (citing [R40-43]), and Plaintiff missed multiple psychological

---

[5]     Plaintiff also noted that the VE testified that there would be no jobs when a limitation was incorporated for Plaintiff's need to rest during the workday due to pain and the effects of medication. [*Id.* at 12]. However, Plaintiff did not previously argue that the ALJ failed to incorporate any limitations pertaining to Plaintiff's physical limitations. Thus, any argument in this regard is abandoned.

22

appointments and rejected proposed medication for her mental condition, (citing [R41, 1202-03, 1205]).  [Doc. 12 at 5-6].  The Commissioner also cited to Dr. Webb's opinion that Plaintiff demonstrated a normal ability to understand, remember and carry out simple instructions; get along with the public, supervisors, and co-workers; deal with changes in the work setting; and make simple work-related decisions.  [*Id*. at 6 (citing [R270-72])].  The Commissioner further cited to Dr. Lewis' opinion that Plaintiff could understand, remember and follow simple and complex instructions and her attention and concentration capabilities appeared adequate.  [*Id*. (citing [R406])].  The Commissioner specifically notes that Dr. Lewis opined that Plaintiff's mood disorder *may* interfere with her ability to satisfy production norms and adhere to a work schedule and concluded that Plaintiff was able to get along with the public, co-workers and supervisors.  [*Id*. at 6-7 (citing [R406])].  The Commissioner further argues that the ALJ appropriately noted that Plaintiff's treatment was essentially routine and conservative in nature which undermines her allegations.  [*Id*. at 7].  The Commissioner thus argues that the ALJ considered and accounted for Plaintiff's mental impairments by restricting Plaintiff to work with only simple instructions and no fast paced production.  [*Id*. at 7-8].

23

Next, the Commissioner argues that the ALJ's finding that Plaintiff was moderately limited in concentration, persistence and pace was based on the Psychiatric Review Technique and was only used to evaluate the severity of Plaintiff's mental impairments at steps two and three, and not the RFC.  [*Id*. at 8].  The Commissioner also argues that the RFC accounted for Plaintiff's moderate difficulties in concentration, persistence or pace and that the ALJ need not specifically use the words "moderate" or "concentration, persistence or pace" so long as the medical evidence supports the ALJ's RFC findings or the ALJ otherwise implicitly accounts for his ratings.  [*Id*. at 9-10 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011))].

The Commissioner also contends that the ALJ specifically considered and discussed the findings of Dr. Lewis which support the ALJ's mental RFC determination.  [*Id*. at 10].  To Plaintiff's arguments that the ALJ failed to discuss the limitations set forth by Dr. Weber, the Commissioner first argues that there is no requirement that the ALJ specifically discuss every piece of evidence.  [*Id*. at 11 n.3].  The Commissioner also argues that the ALJ specifically discussed and considered Dr. Weber's findings, and any oversight or omission was at most harmless.  [*Id*. at 11].  Moreover, the Commissioner argues that Dr. Weber's opinion does not establish that

24

Plaintiff had any additional limitations than that set forth in the RFC.  [*Id*.].  The Commissioner submits that Dr. Weber's notations in the Mental RFC forms do not represent an assessment of Plaintiff's RFC and that any RFC restrictions are recorded in section III of the form.  [*Id*. at 11-12].  The Commissioner argues that in section III, Dr. Weber opined that, overall, Plaintiff was capable of completing simple tasks on a regular basis from a mental standpoint.  [*Id*. at 12 (citing [R426])].  The Commissioner also argues that Plaintiff has failed to show that Dr. Weber's RFC opinion conflicted with the ALJ's RFC finding or rendered her unable to perform her past work.  [*Id*.].  Lastly, the Commissioner argues that remand to have the ALJ specifically discuss Dr. Weber's opinion would serve no practical purpose.  [*Id*. at 14].

The Commissioner argues in response to Plaintiff's arguments on past relevant work that substantial evidence supports the ALJ's finding that Plaintiff can perform her past relevant work as a fast food worker.  [Doc. 12 at 15-18].  The Commissioner argues that Plaintiff indicated she was a fast food worker from July 2000 to September 2000 which means that Plaintiff worked as a fast food worker within fifteen years of the date of the ALJ's decision.  [*Id*. at 15 (citing [R191])].  The Commissioner argues that her earnings show that this was substantial gainful activity.  [*Id*. at 16 (citing [R174, 191]; 20 C.F.R. § 416.974(b)(2)(i))].  Moreover, the Commissioner argues that

AO 72A
(Rev.8/8
2)

Plaintiff did not raise at the hearing the possibility that her work as a fast food worker was not "past relevant work" and thus the ALJ was not required to further discuss and explain this point. [*Id*. at 16-17 (citing *Street v. Barnhart*, 133 Fed. Appx. 621, 627 (11ᵗʰ Cir. May 18, 2005))]. Finally, the Commissioner argues that the ALJ is not required to include in the hypothetical diagnoses, impairments, or unsupported subjective complaints; but only needs to include the claimant's functional limitations that are supported by the record. [*Id*. at 17].

### B.     Discussion

Although Plaintiff's position could have been argued a bit more clearly, the Court finds that Plaintiff has stated enough grounds to support a remand. As Plaintiff has argued, not all of the limitations set forth by Dr. Lewis, the opinion of which the ALJ gave substantial weight, were included in the RFC and the evidence shows that, had they been included, a finding of disabled was required. Here, despite according substantial weight to Dr. Lewis' opinion, the ALJ failed to explain the reasons for not including such limitations in the RFC.

In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11ᵗʰ Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms,

26

diagnosis, and prognosis; what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error). In this regard, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996); *see also Hickel v. Comm'r of Soc. Sec.*, 539 Fed. Appx. 980, 989 (11th Cir. Oct. 28, 2013) (citing SSR 96-8p, and holding that the ALJ was required to address explicit doctor's opinion about plaintiff's need for close supervision and impaired ability to perform at productive pace where VE identified production jobs that plaintiff arguably could perform). *Cf. Lewis*,

27

125 F.3d at 1440 (explaining that when the ALJ discounts the treating physician's opinion, she must articulate her reasons for doing so).  The final RFC determination, however, rests with the Commissioner.  20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff argues that the ALJ failed to incorporate the limitations assessed by Drs. Weber and Lewis and failed to provide a specific weight to Dr. Weber's opinion.  [Doc. 9 at 7-8 & n.5].

The Court begins its analysis with the ALJ's (lack of) discussion of Dr. Weber's opinion.  Plaintiff argues that the ALJ did not address Plaintiff's ability to interact appropriately with supervisors and coworkers.  [Doc. 9 at 7].  In support, Plaintiff cites to Dr. Weber's opinion, asserting that Dr. Weber opined that Plaintiff would have moderate difficulties in maintaining social functioning and moderate difficulties accepting instructions and responding appropriately to criticism from supervisors.  [*Id*. at 7-8 (citing [R425])].  Although Dr. Weber opined in the Psychiatric Review Technique that Plaintiff would have moderate difficulties in maintaining social functioning, [R420], the ALJ implicitly rejected this portion of Dr. Weber's opinion.  [*See* R37].  The ALJ found that Plaintiff had only mild difficulties in maintaining social functioning, relying on the opinion of Dr. Lewis, the consultative examiner.  [*Id*.].  Dr. Lewis opined that Plaintiff appeared to be able to get along with the public,

28

coworkers and supervisors.  [R406].  Dr. Lewis' opinion is thus contradictory to Dr. Weber's opinion.  The regulations further provide that an ALJ will generally give more weight to the opinion of an examining source than a non-examining source.  20 C.F.R. § 416.927(c)(1).  Other than citing to the opinion itself, Plaintiff has not provided this Court with a reason as to why the ALJ should have adopted the opinion of the non-treating consultant over the opinion of the treating psychologist on this issue.  Moreover, Dr. Webb also opined that Plaintiff's ability to get along with supervisors and co-workers is normal.  [R272].

Plaintiff also argues that the ALJ failed to incorporate a limitation for Dr. Weber's opinion that Plaintiff would have moderate difficulties completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  [Doc. 9 at 8 (citing [R425])].  Dr. Weber found Plaintiff limited in this area under the broader category of sustained concentration and persistence and elaborated that Plaintiff would be "able to complete simple tasks/work procedures and be able to make work decisions but would have difficulties with maintaining attention and concentration for extended periods and would have difficulties carrying out detailed instructions."  [R425-26].  Dr. Weber further opined that "[o]verall, [Plaintiff is]

29

capable of completing simple tasks on a regular basis from a mental standpoint. [R426].  Again, the ALJ implicitly accounted for this by determining that Plaintiff could "understand, remember, carry out simple instructions only; and no fast paced production work."   [R38]; *see Thornton v. Comm'r of Soc. Sec. Admin*, 597 Fed. Appx. 604, 612 (11th Cir. Feb. 11, 2015) (finding that medical evidence supported RFC determination that claimant could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence or pace where medical opinions found that claimant could understand, remember, and carry out simple instructions; claimant had a moderate limitation in her ability to sustain concentration for extended periods; concentration was adequate for basic activities; and claimant appeared capable of performing simple tasks without difficulty).  Plaintiff offers no evidence or case law as to how Dr. Weber's opinion on this issue conflicts with the RFC.  Thus, based on Plaintiff's arguments, the ALJ's failure to give weight and explicitly discuss Dr. Weber's opinions is harmless error.  *See Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. Nov. 3, 2005); *Kemp v. Astrue*, 308 Fed. Appx. 423, 426 (11th Cir. Jan. 26, 2009) (recognizing that the ALJ may implicitly make a determination).  However, out of an abundance of caution, it is highly encouraged that

30

on remand, the ALJ specifically discuss and give weight to the opinions of Dr. Weber. *See Winschel*, 631 F.3d at 1179.

Plaintiff's arguments pertaining to the opinions of Dr. Lewis gain more traction. Plaintiff argues that the ALJ did not incorporate into the RFC Dr. Lewis's opinion that Plaintiff's mood disorder may interfere with her ability to adhere to a work schedule. [Doc. 9 at 8 (citing [R406])]. Dr. Lewis' full opinion in this regard was "[Plaintiff's] attention and concentration capabilities appear adequate; however her mood disorder may interfere with her being able to satisfy production norms and adhere to a work schedule." [R406]. The ALJ specifically cited Dr. Lewis' opinion on this issue and gave Dr. Lewis' overall opinions substantial weight, finding that they were consistent with Dr. Lewis' own notes and well supported by other medical evidence of record. [R42] Yet, the ALJ failed to include a specific limitation in the RFC for this limitation despite Plaintiff's attorney raising the hypothetical to the VE which incorporated the limitations set forth by Dr. Lewis, particularly that Plaintiff has a mood disorder that interferes with her being able to satisfy production norms and adhere to a work schedule. [R76]. The VE stated that, with this limitation, Plaintiff could not perform her past work and the VE could not identify any other occupations. [*Id*.]. Unlike

31

Dr. Weber's opinions, it is unclear whether the ALJ accepted or rejected this opinion as he failed to provide any explanation one way or the other.

The Eleventh Circuit has found it to be error for an ALJ to fail to provide an explanation for not incorporating a limitation assessed by a medical source, the opinion of which the ALJ gave great weight. *Watkins v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 868, 871-72 (11th Cir. Feb. 9, 2012) (finding reversible error in ALJ's failure to incorporate treating physician's sit/stand limitation into RFC or give a reason for not doing so although the ALJ gave the opinion "great weight"); *Timmons*, 522 Fed. Appx. at 906 (finding the error to be harmless when the limitations assessed were not required for any of the jobs the ALJ found the plaintiff could perform); *see also Howard v. Comm'r of Soc. Sec.*, No. 5:14-cv-146-Oc-MRM, 2015 WL 5697654, at *6 (M.D. Fla. Sept. 28, 2015) (finding that "[t]he ALJ gave much weight to Dr. Wunsch's opinion, but then failed to mention her finding of Plaintiff's manipulative limitations."); *but see Bristol v. Colvin*, Civil Action No. 1:11cv959-WC, 2013 WL 2147476, at *4 (M.D. Ala. May 15, 2013) (noting that Dr. Estock was not a treating physician, but a state agency reviewing doctor and thus the ALJ was not required to articulate good cause for rejecting the opinion like for a treating physician; however, the court could determine based on the ALJ's opinion that it rejected the

32

limitation and that determination was supported by substantial evidence); *Aquila v. Colvin*, No. 2:13-cv-658-FtM-DNF, 2015 WL 1293020, at *4 (M.D. Fla. Mar. 23, 2015) (finding the doctor's RFC opinion was not entitled to any deference as it is a decision reserved to the Commissioner).

Because *Aquila* does not account for SSR 96-8p, which requires an ALJ to explain why the RFC assessment conflicts with the opinion of a medical source, the Court rejects this opinion. *Aquila* also found that, even if the limitations were adopted in the RFC, the outcome would have been the same as the limitations were nonetheless posed to the VE and thus any error was harmless. 2015 WL 1293020, at *4. Here, the Court cannot say on this record that the error is harmless as the VE testified that a person with this limitation could not perform Plaintiff's past work and could not identify other work that the person could perform. [R76]. Thus, the Court finds that substantial evidence does not support the ALJ's decision at step four and remand is appropriate for the ALJ to make a specific finding concerning Dr. Lewis' opinion that Plaintiff's mood disorder may interfere with her ability to adhere to a work schedule. On remand, the ALJ should also give further consideration to Plaintiff's arguments on whether Plaintiff had "past relevant work" as that term is defined in 20 C.F.R. § 416.960(b)(1).

33

## VII.   CONCLUSION

For all of the reasons above, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** the case for further proceedings consistent with this Order and Opinion.

The Clerk is **DIRECTED** to enter final judgment in Plaintiff's favor.

**IT IS SO ORDERED and DIRECTED**, this the 17th day of March, 2016.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)